# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MILLICENT GAIL C.,[1] | ) | NO. CV 19-10787-KS |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW M. SAUL, Commissioner of | ) | |
| Social Security | ) | |
| Defendant. | ) | |
| _____ | ) | |

___

## INTRODUCTION

Millicent Gail C. ("Plaintiff") filed a Complaint on December 20, 2019, seeking review of the denial of her application for Disability Insurance benefits ("DI"). (Dkt. No. 1.) On January 24, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 8-10.) On July 21, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 15.) Plaintiff seeks an order reversing and remanding solely for calculation of benefits or, in the alternative, for further administrative proceedings. (*Id.* at 34-35.) The Commissioner requests that the ALJ's decision be affirmed. (*Id.* at 35-36.) The Court has taken the matter under submission without oral argument.

---

[1]    Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

2

## SUMMARY OF PRIOR PROCEEDINGS

3

On August 9, 2013, Plaintiff, who was born on June 10, 1968, filed an application for

4   DI. [2] (*See* Administrative Record ("AR") 151-58.)  She alleged disability commencing April

5   4, 2013 due to sleep apnea, hypertension, and carpal tunnel with impingement.  (AR 151, 179.)

6   She previously worked as a user support analyst (DOT[3] 032.262-010) for a healthcare

7   provider.  (AR 3458.)  After the Commissioner initially denied Plaintiff's applications and

8   reconsideration thereof (AR 100-03, 105-09), Plaintiff requested a hearing (AR 110-11).

9   Administrative Law Judge Joan Ho  held a hearing on February 23, 2016, at which Plaintiff

10  and a vocational expert ("VE") testified.  (AR 38-70.)  On May 3, 2016, the ALJ issued an

11  unfavorable decision.  (AR 19-37.)  On May 9, 2017, the Appeals Counsel denied Plaintiff's

12  request for review.  (AR 4-9.)  On June 13, 2017, Plaintiff timely commenced a civil action in

13  this Court challenging the denial of benefits.  (AR 3519-20; *see also* Case No. EDCV 17-1167-

14  SS, Dkt. No. 1.)  On January 30, 2018, the Court approved the parties' stipulation to voluntary

15  remand and entered judgment remanding the case to the Agency.  (AR 3520; EDCV 17-1167-

16  SS, Dkt. Nos. 22-23.)

17

18

On remand, Administrative Law Judge Josephine Arno ("the ALJ") held a hearing on

19  December 14, 2018.  (AR 3466-93)  Plaintiff and a VE testified.  (AR 3467.)  At the hearing,

20  Plaintiff amended her benefits application to a closed period of disability from April 4, 2013

21  to September 1, 2017.  (AR 3469.)  On February 27, 2019, the ALJ issued an unfavorable

22  decision.  (AR 3440-65.)  On October 28, 2019, the Appeals Council affirmed the ALJ's

23  decision.  (AR 3433-39.)  Plaintiff thereafter timely filed this action.  (Dkt. No. 1.)

24  //

25  //

26

27  _____

2       Plaintiff was 44 years old on the alleged onset date and thus met the agency's definition of a "younger person."
*See* 20 C.F.R. § 404.1563(c).

28  3       "DOT" refers to the *Dictionary of Occupational Titles*.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that Plaintiff met the insured status requirements through December 31, 2020.  (AR 3446.)  She found that Plaintiff had engaged in substantial gainful activity since September 2017.  (*Id.*)  However, there had been a 12-month period during which Plaintiff had not engaged in substantial gainful activity, *i.e.*, between the April 4, 2013 onset date and September 2017.  (*Id.*)  She determined that Plaintiff had the following severe impairments: left ankle lateral ligament instability, status post ankle ligament repair and reconstruction; peroneal tendinitis; bilateral carpal tunnel syndrome; obesity; chronic pain syndrome; major depressive disorder; and anxiety disorder.  (AR 3447.)  After specifically considering listings 1.02, 1.04, 11.14, 12.04, and 12.06, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  (AR 3448.)  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> "[Plaintiff] requires the ability to elevate the left lower extremity for 10 minutes per each hour without being off-task; is able to occasionally climb ladders, ropes, or scaffolds; is able to occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, or crawl; may frequently handle and finger with the bilateral upper extremities; is able to understand, remember and carry out simple work tasks; may have occasional interaction with coworkers and supervisors; and no contact with the public."

(AR 3450.)  The ALJ found that Plaintiff could not perform her past relevant work as a user support analyst.  (AR 3458.)  She determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant number in the national economy that Plaintiff could perform, including the jobs of document preparer (DOT 249.587-

018), jewelry preparer (DOT 700.687-062), and bonder semiconductor (DOT 726.685-066). (AR 3459-60.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act from the onset date through the date of the ALJ's decision. (AR 3460.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (citation omitted).  "Even when the evidence is susceptible to more than one rational interpretation, [the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely."  *Orn*, 495 F.3d at 630.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability

4

determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (citations omitted).

## DISCUSSION

Plaintiff raises four issues:  (1) whether the ALJ properly evaluated the opinion of Plaintiff's treating physician regarding her limitations stemming from her ankle impairment; (2) whether the ALJ properly evaluated the opinion evidence regarding Plaintiff's mental impairments; (3) whether the ALJ properly evaluated Plaintiff's subjective statements; and (4) whether the ALJ erred in finding that Plaintiff was capable of performing jobs existing in significant numbers in the national economy.  (Joint Stip. at 2-3.)  For the reasons discussed below, the ALJ did not err in her evaluation of the opinion evidence as to Plaintiff's ankle or mental impairments; her evaluation of Plaintiff's subjective statements; or in finding that that Plaintiff was capable of performing jobs existing in significant numbers in the national economy.  Thus, the decision of the ALJ must be affirmed.

## I.      The ALJ's Evaluation of the Opinion Evidence as to Plaintiff's Ankle Impairment (Issue One)

### A.  Legal Standard

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."  *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  An ALJ errs when she discounts an examining source's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another

medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion." *Id.* at 1012-13.

The opinion of a treating source is generally entitled to greater weight than the opinion of a non-treating doctor because a treating source is "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See id.* at 1012; 20 C.F.R. § 404.1527(c)(2) (governing claims filed before March 27, 2017). Likewise, the opinions of examining sources are given more weight than non-examining source opinions. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject an uncontradicted opinion of a treating or examining source, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The ALJ need not accept a treating source's opinion if it is "brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Alternatively, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

## B. Dr. West's Treatment and Opinion

The record shows that in December 2012, Plaintiff injured her left ankle while at work. (AR 1447-48, 2320.) Although an x-ray showed no evidence of fracture or dislocation, Plaintiff was given a brace and placed in a support shoe. (AR 1448.) Plaintiff was referred to physical therapy, after which she returned to work and was ambulatory with use of the support shoe. (*Id.*) Despite some improvement to her range of motion and ability to stand and walk,

6

Plaintiff still had difficulty standing and walking for extended periods. (*Id.*) She noted increased pain in her lower back and hips due to compensation for the injury. (*Id.*) In July 2013, Plaintiff underwent a left lateral ankle ligament repair and reconstruction and had post-operative physical therapy. (*Id.*) Nonetheless, Plaintiff's pain and swelling persisted, precluding her from returning to work. (*Id.*)

Between December 2012 and July 2014, Plaintiff was treated by Gerald Ivan West, M.D., a specialist in occupational medicine. (*See generally* AR 248-1452.) His progress notes reveal that during his course of treatment, Dr. West imposed various physical restrictions on Plaintiff stemming from her ankle impairment; these included a prohibition against squatting, bending, twisting, climbing stairs, lifting more than a few pounds, working more than a few hours, or continuously walking or standing for longer than 20 minutes. (*See, e.g.*, AR 387 (December 28, 2012), 417 (January 15, 2013), 429 (January 29, 2013), 441 (February 13, 2013), 453 (February 19, 2013), 469 (February 22, 2013), 496 (February 27, 2013), 511 (March 7, 2013), 529 (March 21, 2013), 556-57 (April 4, 2013), 571 (April 19, 2013), 584 (April 24, 2013), 616 (May 6, 2013), 645 (May 22, 2013), 657 (June 6, 2013), 677 (June 21, 2013), 698 (July 24, 2013), 736 (August 13, 2013), 823 (September 11, 2013), 864 (October 3, 2013), 1043 (December 11, 2013), 1079-80 (January 23, 2014), 1095-98 (February 19, 2014), 1121 (March 17, 2014), 1136 (March 31, 2014), 1148 (April 7, 2014), 1161 (April 14, 2014), 1284 (April 21, 2014), 1308 (May 1, 2014), 1336 (May 2, 2014), 1362 (May 22, 2014), 1406 (June 17, 2014), 1452 (July 16, 2014).)

In July 2014, Dr. West completed a Permanent and Stationary Report in connection with Plaintiff's workers' compensation claim. (AR 1447-55.) Plaintiff told Dr. West that she could only relieve the swelling in her left ankle by elevating her foot "above her heart" throughout the day; Dr. West observed that would likely affect her ability to continue working. (*Id.*) Plaintiff's treatment included Ibuprofen and Norco as needed, and home physical therapy exercises. (*Id.*) Plaintiff rated the "constant" and "throbbing" pain in her left ankle at 5 out

7

of 10, aggravated by walking and standing.  (AR 1449.)  A physical examination of her left ankle revealed mild to moderate swelling and tenderness to palpation; antalgic gait; and ability to walk with a limp.  (AR 1450.)  Plaintiff had negative anterior drawer, talar tilt, squeeze, and cross leg tests; and negative dorsiflexion-eversion, dorsiflexion, plantarflexion, eversion, and inversion.  (*Id.*)  She exhibited normal range of motion and tenderness in her lumbar back with mild to moderate palpation in paraspinal regions extension to buttocks, no bony tenderness, and no deformity.  (*Id.*)  She had negative seated leg raise right and left, supine straight leg raise right and left, and Waddell's tests; and negative Patrick's right and left and Trendelenburg's right and left.  (AR 1450-51.)  An examination of Plaintiff's reflexes and sensory lower extremities revealed no abnormal findings.  (AR 1451.)  Plaintiff's impairments affected some of her activities of daily living, including her self-care, personal hygiene, physical activity with standing, travel with prolonged driving, and sleep; but not her communication, sensory function, or non-specialized hand activities.  (*Id.*)  An x-ray of Plaintiff's left ankle revealed no acute fracture, normal alignment, no significant joint disease, and soft tissue swelling.  (AR 1452.)

Dr. West diagnosed Plaintiff with left ankle joint pain.  (*Id.*)  He opined that Plaintiff had reached maximum medical improvement and she could work with the following restrictions:  walking/standing for "no greater than 20 minutes continuously for a total of 40 minutes per hour," and she required "at least 10 minutes per hour to elevate her left leg above the level of her heart."  (*Id.*)  Dr. West found that Plaintiff had a whole person impairment of 7%, with her gait classified as mild (antalgic limp with shortened stance phase and documented moderate-to-advanced arthritic changes of the hip, knee, or ankle).  (AR 1452-53.)  He recommended that she receive at least six sessions per year of physical therapy and annual refills of her analgesic medication; further, if these conservative measures were ineffective, it was reasonable to anticipate further consultation with an orthopedic surgeon.  (AR 1454.)  Dr. West did not examine Plaintiff at any time after completing his report.  (AR 61.)

//

**C. Analysis**

The ALJ assigned little weight to Dr. West's opinion and provided three reasons for doing so.  First, although the ALJ adopted Dr. West's elevation of the leg limitation in the RFC assessment, she found that his other opined limitations were overly restrictive and not supported by the medical evidence of record.  (AR 3455.)  She observed that even though Dr. West had assessed significant physical limitations and limited Plaintiff to only brief periods of walking and standing, x-ray imaging of Plaintiff's left ankle showed no acute fracture, normal alignment, and no significant joint disease.  (*Id.*)  Second, the ALJ determined that Dr. West's opinion was inconsistent with record evidence from other medical and non-medical sources.  (*Id.*)  Third, the ALJ reasoned that Dr. West's opinion was inconsistent with Plaintiff's activities of daily living.  (*Id.*)

The Court finds that the ALJ articulated specific and legitimate reasons supported by substantial evidence for discounting Dr. West's opined limitations.  As to the ALJ's first two reasons, inconsistency with objective medical evidence and/or with other record evidence are valid reasons for rejecting a treating physician's opinion.  *See Magallanes*, 881 F.2d at 751-52.  Here, the ALJ's reasons are supported by substantial evidence.  In his report, despite assessing highly restrictive limitations, Dr. West's own examination revealed no abnormal findings related to Plaintiff's left ankle, only mild to moderate swelling, and the ability to walk with a limp and antalgic gait.  (AR 1450-51.)  There is also little evidence to support Dr. West's opinion that Plaintiff was severely limited in her abilities to bend, stoop, twist, climb stairs, lift more than a few pounds, work more than a few hours, walk or stand for more than 20 minutes continuously, and lift her leg above the level of her heart.  A March 2013 x-ray showed no fracture, normal alignment, no joint disease, and only some soft tissue swelling. (AR 528, 1352.) Following Plaintiff's October 2013 surgery to repair a torn ligament, Plaintiff reported good recovery—in February 2014, she reported no complaints and significant improvement, she had no pain, and was found able to return to full work duties.  (AR 1087,

1095.)  In May 2014, a physical examination revealed only mild to moderate tenderness.  (AR 1373.)  Additionally, Plaintiff's examinations in the months following Dr. West's report produced no findings to substantiate the limitations he opined.  (AR 1634-37 (January 2015 negative anterior drawer test, talar tilt test, squeeze test, inversion test), 1670 (Plaintiff reported pain managed with Salon Pas medication and ice (but no elevation)), 2176 (June 2015 report that pain was well-managed), 4670 (October 2016 Plaintiff reported no acute distress).)  Although it is certainly possible that an individual with Plaintiff's medical history might experience some pain and/or limitations, it was not unreasonable for the ALJ to conclude that the record evidence was inconsistent with the limitations that Dr. West opined; thus, the Court defers to the ALJ's reasonable interpretation of the evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff takes issue with the ALJ's failure to incorporate in her RFC assessment Dr. West's statement that Plaintiff need elevate her leg "above the level of her heart."  (Joint Stip. at 4-5.)  The Court is not persuaded that the ALJ erred in this regard.  The ALJ did incorporate within the RFC Plaintiff's need to elevate her leg, albeit not to a specific height.  (AR 3450.)  She then rejected Dr. West's "other limitations" on the basis of their inconsistency with record evidence.  (AR 3455.)  An ALJ need not systematically adopt or reject each statement uttered by a physician and provide reasons for their decisions—to so require would impose a heavy burden on ALJs, who must already comb through often voluminous medical records.  *Cf. Burch*, 400 F.3d at 680-81 (affirming ALJ's decision where, although stated with "less than ideal clarity," the ALJ's "path may be reasonably discerned").  Here, it is reasonable to presume here that "other limitations" included Dr. West's opinion that Plaintiff be required to elevate her leg above heart level.  The ALJ's rejection of that limitation is supported by substantial evidence.  The record reveals that in January 2014, Plaintiff reported improvements in her ability to stand and walk for extended periods.  (AR 1077.)  In June 2015, she complained of moderate left ankle edema with prolonged standing that was partially alleviated by elevation of the legs and feet.  (AR 2187.)  In response, her doctor indicated that she should

10

elevate her feet "as much as possible," but not to a specific height.  (AR 2189.)  The ALJ gave partial weight to that doctor's opinion, noting that she adopted the left leg limitation, but that the phrase "as much as possible" was vague and uncertain.  (AR 3455.)  Plaintiff was consistently treated for lower extremity pain, swelling, and tenderness, yet there were minimal diagnostic findings.  (*See, e.g.*, AR 527-28, 871.)  Other evidence shows that the limitation for elevating the leg above the heart was adopted at Plaintiff's own insistence, as the only means to control pain.  (AR 1448.)  Yet, the ALJ noted (and the record reflects) that Plaintiff claimed she was able to adequately control her pain with medication.  (AR 2176, 3452.)  Given this evidence, the ALJ's rejection of the limitation that Plaintiff be able to elevate her leg above heart level was reasonable.  *See Burch*, 400 F.3d at 680-81.

As to the ALJ's third reason—inconsistency with activities of daily living—this too is a specific and legitimate reason to discount Dr. West's opinion.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999).  Here, the ALJ's reason is supported by substantial evidence.  The record includes Plaintiff's reports that she engaged in moderate activity, experienced only mild limitations, drove, traveled, and performing daily activities such as going to the library and getting out of the house; yet, she insisted she was unable to work.  (*See, e.g.*, AR 1671 (January 23, 2015), 2176 (June 2015 Plaintiff traveled to Louisiana and pain was well-managed).)  Plaintiff also stated in October 2013 that she engaged in moderate to strenuous exercise, *i.e.*, a brisk walk, five days per week, for about twenty 3paintingminutes each day.  (AR 866-67.)  Therefore, it was reasonable for the ALJ to conclude that Plaintiff's ability to do these activities was inconsistent with the severe limitations opined by Dr. West.  *Molina*, 674 F.3d at 1110.

Plaintiff also argues that because the ALJ omitted this limitation from the RFC assessment, the ALJ relied on an incomplete hypothetical posed to the VE to conclude that Plaintiff could perform jobs identified by the VE.  (Joint Stip. at 5-6.)  The Court discusses and rejects this argument at greater length *infra* in its discussion of Issue Four.

Accordingly, the Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence for discounting Dr. West's opinion.  Remand on this ground is not warranted.

## II.     The ALJ's Evaluation of the Mental Impairment Opinion Evidence (Issue Two)

### A. The Mental Opinion Evidence

In December 2013, Rama Nadella, M.D., a board-certified psychiatrist completed a Complete Psychiatric Evaluation to assess Plaintiff's mental functioning.  (AR 1058-62.)  Dr. Nadella did not review Plaintiff's medical records.  (AR 1058.)  He noted that Plaintiff chiefly complained of depression and anxiety.  (*Id.*)  Plaintiff told Dr. Nadella that she was doing well until April 2013 when she injured her ankle; thereafter, she remained homebound, experienced persistent pain, and could not drive or do other tasks by herself.  (AR 1058-59.)  Plaintiff expressed that she was not getting the help she needed, had trouble sleeping, had panic attacks, cried, and easily became upset.  (AR 1059.)  Plaintiff took Celexa and Ativan as needed.  (*Id.*)  She could dress, bathe, and take care of her personal hygiene with assistance at times.  (AR 1060.)  She could not drive or do household chores.  (*Id.*)  She got along well with her family, but felt more depressed and less social than in the past.  (*Id.*)

Dr. Nadella's mental status examination revealed the following.  Plaintiff's thoughts were coherent and organized, with no tangentiality, and relevant and non-delusional, with no psychotic content; she denied any current suicidal, homicidal, or paranoid ideation.  (*Id.*)  Her mood was anxious, depressed, and tearful, with no tangentiality.  (*Id.*)  She was alert and oriented to time, place, person, and purpose; she appeared to be of average intelligence.  (*Id.*)  She could recall 3 out of 3 items immediately and 1 out of 3 items after five minutes.  (*Id.*)  She could name the country's current and previous presidents.  (AR 1061.)  She could do simple calculations and correctly interpret proverbs.  (*Id.*)  Her insight and judgment appeared

intact.  (*Id.*)  Dr. Nadella diagnosed Plaintiff with depressive disorder, not otherwise specified, with chronic pain as a psychosocial stressor.  (*Id.*)  He prognosed that Plaintiff's depression was not expected to improve in the next 12 months, even with active treatment.  (*Id.*)  Based on his examination, Dr. Nadella made the following functional assessment:  Plaintiff could not perform simple and repetitive or detailed and complex tasks; could not maintain regular attendance; was moderately limited in completing a normal workday without interruption; and was markedly limited in performing work activities on a consistent basis, accepting instructions from supervisors, dealing with the usual stressors encountered in competitive work, and interacting with the public, coworkers, and supervisors.  (AR 1062)

In January 2014, Plaintiff's record was evaluated by Timothy Schumacher, Ph.D., a state consultative examiner, in connection with Plaintiff's initial disability application.  (AR 76-81.)  Dr. Schumacher found that based on evidence of Plaintiff's condition through late 2013, Plaintiff had medically determinable impairments of, *inter alia*, anxiety disorders and affective disorders.  (AR 76.)  He found that Plaintiff had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and concentration, persistence, and pace; and no episodes of decompensation.  (AR 77.)  He found that Plaintiff's medical determinable impairment could reasonably be expected to produce her symptoms.  (*Id.*)  However, her statements about the intensity, persistence, and pace of her symptoms were not substantiated by the medical evidence alone.  (AR 78.)  He observed that Plaintiff showed grossly normal mental status, and found her partially credible because although she reported mood-anxiety symptoms, she could perform routine work.  (*Id.*)  Dr. Schumacher gave Dr. Nadella's opinion limited weight, as it was overly restrictive and not consistent with the objective evidence.  (*Id.*)  In sum, he assessed the following RFC.  Plaintiff had no limitation with memory or understanding.  (AR 80.)  She had moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday or work week without interruptions from psychological symptoms.  (*Id.*)  But she was not significantly limited in any other areas of concentration and

persistence.  (*Id.*)  Plaintiff experienced stress from close interaction with the general public and from critical supervision, which aggravated her mood and anxiety symptoms; these resulted in moderate limitation in her ability to appropriately interact with the general public, to accept instructions, and to respond appropriately to criticism from supervisors.  (AR 80-81.)  Finally, Plaintiff could engage in routine contacts with coworkers and employees and she did not have adaptation limitations.  (AR 81.)

In May 2014, Plaintiff's record was evaluated by Kim Morris, Psy.D., a consultative examiner, who reviewed Plaintiff's condition in connection with Plaintiff's disability determination on reconsideration.  (AR 90-95.)  Dr. Morris assessed the same limitations and drew the same conclusions as Dr. Schumacher.  (*See generally id.*)

In February 2015, Plaintiff was evaluated by Josephine Ogawa, a licensed marriage and family therapist ("LMFT") and psychiatric social worker.  (AR 1769-75.)  Plaintiff reported that she felt overwhelmed, angry, tired, irritable, tearful, depressed, stressed, overwhelmed, and frustrated at home; she also had trouble communicating with her husband.  (AR 1769.)  She experienced depressed mood and anxiety, with difficulty controlling worry, restlessness, and feelings of being on edge.  (AR 1770.)   A mental status examination revealed fair grooming; appropriate dress and affect; cooperative yet occasionally tearful behavior; normal speech; intact attention and concentration; depressed, frustrated, and angry mood; normal thought form and content; average vocabulary; good/average fund of information, abstraction, and generalization; aware sensorium/cognition; orientation to person, place, time, and situation; intact alertness and memory; and good insight and judgment.  (AR 1773.)  Plaintiff's risk of suicide was low.  (AR 1773-74.)  Ogawa diagnosed Plaintiff with anxiety and depression unspecified, in addition to a myriad of physical issues indicated in the record.  (AR 1774.)  She noted that Plaintiff experienced occupation problems; some difficulty in social or occupational functioning; some meaningful relationships; and she generally functioned well.  (*Id.*)  Ogawa assessed that Plaintiff was mildly impaired in maintaining self-care, getting along

with interpersonal relationships, and being able to participate in usual social/community activity; and she was mildly to moderately impaired in her ability to perform work tasks.  (AR 1774-75.)  Ogawa recommended that Plaintiff continue with therapy; incorporate exercise, relaxation techniques, and healthy eating habits into her life; use positive affirmations; and increase her self-care.  (AR 1775.)

### B.  The ALJ's Decision

The ALJ gave partial weight to the opinions of the state agency consultants.  (AR 3457.) She found that based on Plaintiff's normal intelligence, fund of knowledge, calculations, and abstract thinking, the consultants' limitation to one to two-step assignments was overly limiting; and the limitations assessed in the RFC more closely reflect mental status examinations that indicated Plaintiff had normal appearance, attire, grooming, hygiene, eye contact, motor activity, manner, affect, speech, though process, thought content, cognition, concentration, insight, judgment, reliability and impulse control.  (*Id.*)  The ALJ then noted that she adopted those specific restrictions on a function-by-function basis that were best supported by the objective evidence as a whole.  (*Id.*)

The ALJ gave partial weight to Ogawa's opinion.  (*Id.*)  She found that Ogawa's opinion that Plaintiff had mild to moderate limitations performing work tasks was consistent with Plaintiff's mental status examinations.  (*Id.*)  However, the ALJ noted that the term "moderate" was vague and ill-defined, and the ALJ adopted those specific restrictions on a function-by-function basis that were best supported by the objective evidence as a whole.  (*Id.*)

The ALJ gave little weight to Dr. Nadella's opinion.  (*Id.*)  She first found that the objective medical evidence did not support the extent of Dr. Nadella's limitations.  (*Id.*)  She then found that Dr. Nadella's opinion was inconsistent with other medical and non-medical sources in the record, as well as with Dr. Nadella's own mental status examination, which

15

revealed benign findings.  (*Id.*)  The ALJ noted that more weight was given to Ogawa's opinion because Ogawa had a treatment relationship with Plaintiff, she saw Plaintiff more frequently than Dr. Nadella, and her opinion was more consistent with the record as a whole.  (*Id.*)  Conversely, Dr. Nadella did not have a treatment relationship with Plaintiff, did not frequently examine her, and lacked a longitudinal understanding of Plaintiff's condition.  (AR 3458.)

**C. Analysis**

      *i.  Dr. Nadella's Opinion*

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Nadella's opinion.  (Joint Stip. at 12-14.)  The Court disagrees.  The ALJ provided three reasons for rejecting Dr. Nadella's opinion:  first, it was not supported by objective and other record evidence; second, it was inconsistent with his own examinations findings; and third, he did not have a treatment relationship with Plaintiff or a longitudinal understanding of her condition.  (AR 3457-58.)  Contrary to Plaintiff's contention otherwise, the ALJ properly relied on these justifications for rejecting Dr. Nadella's assessed functional limitations.

The first reason provided by the ALJ—inconsistency with objective and other record evidence—is a specific and legitimate reason for discounting Dr. Nadella's opinion.  *See Thomas*, 278 F.3d at 957 (permitting ALJ to reject opinion that is "inadequately supported by clinical findings").  This reason is supported by substantial evidence.  The record contains numerous clinical findings from Plaintiff's mental status examinations, showing mild findings that do not comport with the restrictive limitations opined by Dr. Nadella.  Plaintiff's mental status examinations throughout the relevant period consistently showed unremarkable findings, with normal thought content and process, mood, affect, insight, judgment, reliability, impulse control, and behavior.  (AR 622 (May 7, 2013), 1014-16 (November 22, 2013, noting

16

moderate symptoms and moderate difficulty in social, occupational, or school functioning), 1234 (April 11, 2014), 1530-33 (September 29, 2014, noting Plaintiff's condition as stable and symptoms as moderate), 2037-40 (April 13, 2015, noting Plaintiff's condition as stable and symptoms as moderate), 3841 (April 29, 2015), 4173-75 (September 21, 2015, noting Plaintiff's condition as stable and symptoms as moderate), 4237-39 (December 15, 2015, noting Plaintiff's condition as stable and symptoms as moderate).)[4]   By January 2017, Plaintiff's anxiety was reported as "stable."  (AR 4751.)  Thus, on this record, it was entirely reasonable for the ALJ to conclude that Dr. Nadella's opinion that Plaintiff had marked limitations in several areas of mental functioning was entitled to little weight.  *Molina*, 674 F.3d at 1110.

The ALJ's second stated reason—inconsistency with his own examination—is also a specific and legitimate reason for discounting Dr. Nadella's opinion.  *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (holding that ALJ properly rejected doctor's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that incongruity between doctor's opinion and medical records is a specific and legitimate reason for rejecting doctor's opinion).  This reason, too, is supported by substantial record evidence.  Dr. Nadella opined that Plaintiff had marked limitations in nearly all areas of mental functioning and could not perform even simple or repetitive tasks.  (AR 1062.)  Yet, his own examination of Plaintiff produced only mild findings, including organized and coherent thoughts; no suicidal, homicidal, or paranoid ideation; intact insight and judgment; and anxious and depressed mood, with no tangentiality.  (AR 1060.)  The connection between Dr. Nadella's findings and his functional assessment is tenuous at best, and he fails to reconcile or clarify these incongruities. The ALJ did not  substitute her own interpretation of the evidence for that of Dr. Nadella;

---

[4]   The ALJ cited and relied on these mental status examinations during her review of the mental medical evidence, and they provided support for her RFC assessment and evaluation of the relevant opinion evidence.  (AR 3456-57.) Accordingly, Plaintiff's argument that the ALJ's reasoning for upholding her RFC as consistent with the objective evidence, *i.e.*, that it was general, conclusory, and legally insufficient, is without merit.

rather, she adequately articulated and explained that she was discounting Dr. Nadella's opinion because of its inconsistency with his own clinical findings.  *See Magallanes*, 881 F.2d at 755 (finding the specific and legitimate standard met where the ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings"); *Dupre v. Berryhill*, 765 F. App'x 258, 259 (9th Cir. 2019) ("The ALJ specifically stated [the doctor's] opinion conflicted with the fairly normal mental status examination"; accordingly, "the ALJ's path may be reasonably discerned." (internal quotation marks omitted)).

Because the ALJ provided these  appropriate reasons for discounting Dr. Nadella's opinion, the Court need not address the adequacy of the third reason provided by the ALJ, *i.e.*, the lack of treatment relationship and/or longitudinal understanding of Plaintiff's condition. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Ford v. Saul*, 950 F.3d 1141, 1156 n.8 (9th Cir. 2020).

### ii.  Ogawa's Opinion

Plaintiff asserts that the ALJ erred by crediting the opinion because Ogawa was not an "acceptable medical source," she did not have a longitudinal view of Plaintiff's condition (having only addressed Plaintiff's impairments for three months predating her opinion), and there was no suggestion that her assessment of "mild to moderate" limitations equated to the "mild to moderate limitations" utilized in evaluating mental impairments in social security claims.  (Joint Stip. at 14.)  The Court finds that none of these arguments warrant disturbing the ALJ's evaluation of Ogawa's opinion.

As an initial matter, "only licensed physicians and certain other qualified specialists are considered 'acceptable medical sources.'"  *Molina*, 674 F.3d at 1111 (citing 20 C.F.R. § 404.1513(a)).  Therapists are "other medical sources," 20 C.F.R. § 404.1513(d)(1), whose

18

opinions entitled to less deference; "[t]he ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (internal citations omitted).  "[I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source."  20 C.F.R. § 404.1527(f)(1).  Evidence from other medical sources, including therapists, may be used to show the severity of an impairment or how it affects the ability to work.  *Id.*; *see also Garrison*, 759 F.3d at 1023; *but see Molina*, 674 F.3d at 1111 (finding that an ALJ may reject the opinion of an "other medical source" where the opinion is conclusory, provides little explanation of the evidence relied on, or is inconsistent with the opinion of an acceptable medical source).  Other medical source opinions can outweigh the opinions of acceptable medical sources in some cases.  *See* Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939 (Aug. 9, 2006).  The Agency has opined that "[o]pinions from these [other] medical sources [including therapists] . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file."  *Id*.  Moreover, other medical source opinions are analyzed using the same factors utilized for weighing acceptable medical source opinions.  *Id.*

Ogawa is a LMFT, which is an "other medical source."  *See, e.g.*, *Quezada v. Berryhill*, Case No. EDCV 16-1013-KS, 2017 WL 2312353, at *4 (C.D. Cal. May 26, 2017); *Roundtree v. Colvin*, Case NO. EDCV 14-803-JEM, 2015 WL 667696, at *6 (C.D. Cal. Feb. 17, 2015). But contrary to Plaintiff's assertion otherwise, Ogawa's status as an other medical source does not by itself warrant rejection of her opinion; the ALJ must still articulate germane reasons for discounting the opinion.  *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015). Here, she did just that.  The ALJ partially credited Ogawa's opinion on the basis of its consistency with Plaintiff's mental status examinations and with the record as a whole (reasons Plaintiff does not challenge as inadequate).  (AR 3457.)  These conclusions were germane to Ogawa because they specifically pertained to the propriety of her assessment in the context of the record as a whole and of her role in Plaintiff's treatment.  Moreover, the reasons are supported by

substantial evidence.  Ogawa's functional assessment is consistent with the findings she made on mental status examination and with Plaintiff's other mental status examinations, which showed generally mild findings.  (*See* AR 622, 1014-16, 1234, 1530-33, 1773-74, 2037-40, 3841, 4173-75, 4237-39.)

The ALJ also partially credited Ogawa's relationship on the basis of her treatment relationship with Plaintiff.  The regulations specifically contemplate that it "may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source."  20 C.F.R. § 404.1527(f)(1).  That is exactly the scenario here.  Unlike Dr. Nadella, who only examined Plaintiff once and did not review her medical records, Ogawa rendered her opinion based on at least a three-month view of Plaintiff's condition.  (AR 1774.)  Even if Ogawa's opinion is based only on a fraction of Plaintiff's medical history, it is still more extensive than the blurry snapshot offered by Dr. Nadella, whose opinion finds no support in the record or in his own examination findings.

Finally, Plaintiff posits that the language Ogawa used, assessing "mild to moderate" limitations, did not necessarily equate to the "mild to moderate" terminology utilized in social security claims.  (Joint Stip. at 14.)  The Court is not persuaded that remand is warranted on this basis.  First, the ALJ already discounted Ogawa's use of the term "moderate" as vague and ill-defined.  (AR 3457.)  Therefore, at least some of Plaintiff's argument is moot. Additionally, it is not clear that the ALJ was obligated to translate the terms used by Ogawa into corresponding social security terminology.  An ALJ must translate terms of art contained in medical opinions submitted in state workers' compensation proceedings into the corresponding social security terminology "to accurately assess the implications of those opinions for the Social Security disability determination."  *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1106 (C.D. Cal. 2002).  But Ogawa offered her opinion in the ordinary course of treatment, not in the workers' compensation context, so no translation obligation was triggered

20

here.  The ALJ also has an independent duty to further develop the record in order to resolve any ambiguities that exist.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  But Ogawa's use of the term "mild and moderate" is not facially ambiguous, as those terms are routinely used to evaluate impairments in social security claims.  *See* 20 C.F.R. § 404.1520a(c)(4) (rating the degree of functional limitations due to mental impairments using the terms "none," "mild," "moderate," "marked," and "extreme").  Accordingly, Plaintiff has failed to persuade the Court that the ALJ committed reversible error in this regard.  But even if the ALJ did err by failing to translate the terminology used by Ogawa to the social security setting, any error was harmless because the ALJ gave additional legitimate reasons in support of her evaluation of Ogawa's opinion.

### iii.   The Non-Examining State Agency Consultants' Opinions

Plaintiff argues that the ALJ erred by giving greater weight to the opinions of the state agency consultants because Dr. Nadella's examining physician opinion should have been given greater weight than the non-examining consultants' opinions; and the ALJ failed to reconcile the differences between Dr. Nadella's opinion and the less restrictive assessment offered by the non-examining physicians.  (*Id.* at 14-15.)  The Court disagrees.

Although the opinion of an examining physician is ordinarily given greater deference than that of a non-examining physician, *Lester*, 81 F.3d at 830, if the examining physician's opinion is contradicted by that of another doctor, it may be rejected for specific and legitimate reasons that are supported by substantial evidence, *id.* at 830-31.  As discussed *supra*, the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounting Dr. Nadella's opinion.  The ALJ also credited the opinions of the state agency consultants based on their consistency with Plaintiff's mental status examinations discussed above, which was an appropriate reason provided in support of the evaluation.  While the "opinion of a nonexamining physician cannot be itself constitute substantial evidence that

21

justified the rejection of the opinion [of] an examining physician," *id.* at 831, the ALJ's evaluation of Dr. Nadella's opinion was supported by several mental status examinations and other evidence other than difference between his assessment and those of the state agency consultants.

While the ALJ did not perform a side-by-side comparison of the functional limitations assed by Dr. Nadella and the state agency consultants, the plain text of her decision makes clear that the same record evidence supported the limitations assessed by the state agency consultants, but did not support those assessed by Dr. Nadella. This is not a case where the ALJ failed to explain the reasons she give for her evaluations of the opinion evidence, or where she assigns weight to opinions *ex nihilo*. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996) (finding that ALJ erred when he did not explicitly reject examining psychologist's opinion or set forth specific, legitimate reasons for crediting non-examining psychologist's opinion over his). Accordingly, the ALJ did not err in her evaluation of the state agency physician opinions.

In sum, the ALJ provided specific and legitimate evidence supported by substantial evidence for her evaluation of the mental impairment opinion evidence. Accordingly, remand for reconsideration of the opinion evidence is not warranted.

## III.   The ALJ's Finding that Plaintiff Could Perform Jobs in the National Economy (Issue Four)

### I.   Legal Standard

The Commissioner has the burden to establish that, considering the RFC, the claimant can perform other work. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). To make this showing, the ALJ may rely on the testimony of a VE. *Tackett v. Apfel*, 180 F.3d 1094, 1099

(9th Cir. 1999). The ALJ may pose hypothetical questions to the VE to establish (1) what jobs, if any, the claimant can do, and (2) the availability of those jobs in the national economy. *Id.* at 1101. These hypotheticals must depict the claimant's disability in a manner that is "accurate, detailed, and supported by the medical record" and "set[s] out all of the claimant's impairments." *Id.* (citation omitted). The VE's testimony "is valuable only to the extent that it is supported by the medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). "If a [VE]'s hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

## II.    Analysis

At the December 14, 2018 hearing, the ALJ first asked the VE to consider a hypothetical individual with the same age, education, and work background as Plaintiff, who could also perform sedentary exertion work, "except the individual requires the ability to elevate the left lower extremity for ten minutes per hour – per each hour without being off task, is able to occasionally climb ladders, ropes or scaffolds, ramps or stairs, occasionally balance, stoop, kneel, crouch or craw, may frequently handle and finger with the bilateral upper extremities, is able to understand, remember and carryout [sic] simple work tasks, may have occasional interaction with coworkers and supervisors and no contact with the public." (AR 3484.) The VE testified that such an individual could not perform Plaintiff's past job as a user support analyst, but could perform the jobs of document preparer, jewelry preparer, or bonder semiconductor. (*Id.*)

Plaintiff's counsel asked the VE to consider a hypothetical individual with the same limitations the ALJ stated in her hypothetical, and with the additional limitation of "at least ten minutes per hour to elevate her left leg above the level of her heart." (AR 3485.) The VE

responded that such individual would not be able to perform any of the jobs identified by the VE because "the person would have to be off task if they had to elevate their leg above the heart level." (*Id.*)  Plaintiff's counsel later asked the VE to consider an individual with the mental work-related limitations that Dr. Nadella opined, *i.e.*, no contact with public, coworkers, and supervisors; inability to maintain regular attendance; and the need for additional supervision.  (AR 3490-91.)  The VE responded that an individual with any of these additional restrictions would not be able to perform the jobs identified by the VE.  (*Id.*)

Plaintiff argues that the ALJ improperly relied on the VE's response to her hypothetical question that did not include the physical and mental work-related limitations Plaintiff claims were established by Drs. West's and Nadella's opinions; therefore, she asserts that the VE's testimony did not constitute substantial evidence to support the ALJ's finding that Plaintiff was capable of performing jobs in the national economy identified by the VE.  (Joint Stip. at 5-6, 31-33.)  The Court disagrees.

Plaintiff bases her argument on the premise that the ALJ erred by rejecting the more restrictive limitations opined by Drs. West and Nadella.  As discussed at length *supra*, the ALJ she provided specific and legitimate reasons supported by substantial evidence for discounting those doctors' opinions and rejecting their more restrictive opined limitations.  An ALJ need not accept as true restrictions presented in a hypothetical propounded by a claimant's counsel. *Magallanes*, 881 F.2d at 756.  Here, the ALJ properly rejected the more restrictive limitations opined by those doctors and, therefore, she was not required to rely on those limitations in the hypothetical question she posed to the VE.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Batson*, 359 F.3d at 1197 (holding that ALJ is not required to adopt VE testimony that is based on properly discounted testimony and medical opinions).  Thus, the ALJ did not err in finding that Plaintiff could perform jobs existing in significant number in the national economy.

//

24

**IV.    The ALJ's Evaluation of Plaintiff's Subjective Statements (Issue Three)**

 **A.  Legal Standard**

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms.  *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quotation omitted).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Id.*; *Carmickle*, 533 F.3d at 1161 (providing that court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

In March 2016, the Commissioner promulgated SSR 16-3p, which "makes clear what [Ninth Circuit] precedent already required:  that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo*, 871 F.3d at 678 n.5.  Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about her pain and limitations by referring to the factors set forth in 20 C.F.R. § 404.1529(c)(3), which include:  the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional imitations and restrictions."  SSR 16-3p.  However, the Commissioner cannot reject subjective

pain statements on the sole ground that they are not fully corroborated by objective medical evidence. *Rollins*, 261 F.3d at 857.

### B. Plaintiff's Subjective Statements

Plaintiff testified twice about her impairments, at the February 2016 and December 2018 hearings. (AR 46-65, 3470-82.) At the February 2016 hearing, she alleged that she had been unable to work since April 2013 due to pain and anxiety. (AR 48, 53.) She claimed that the medication she took impeded her ability to focus and concentrate. (AR 53.) She briefly attempted to work in 2015, but could not due to "excruciating" pain. (AR 48-49.) Plaintiff testified at the hearing she had carpal tunnel in both hands with an ulnar impingement in her neck. (AR 54, 58-59.) She dropped items, her hands went numb when she tried to write, they ached and cramped all day, and she could not lift anything heavy or pick up coins. (AR 56-58.) At times, she experienced edema and swelling in her hands. (AR 62.) As to her neck, Plaintiff treated her pain with medication, but her nerves tightened if she sat for too long. (AR 58.) She had back pain, but could not recall the medical diagnosis for her back issues. (AR 54, 59-60.)

Plaintiff injured her ankle in 2013; an MRI revealed she had fully torn her ligament and she underwent surgery. (AR 60-61.) Despite the surgery, Plaintiff still experienced significant pain and severe swelling. (AR 61.) She took medication, which somewhat helped with pain, but did not reduce swelling. (*Id.*) She could not stand for long periods without her left ankle swelling, and she had edema in her arms and legs. (AR 54.) She also received treatment for anxiety. (AR 55, 63.) As to her daily activities, Plaintiff could feed and dress herself, and could button clothes if required. (AR 56-57.) She drove two to three times per week to go to the grocery store and to pick up her medications. (AR 47.) Plaintiff generally walked with a cane, which she had used since she stopped using her support boot approximately two years earlier. (AR 47-48.)

At the December 2018 hearing, Plaintiff explained that she experienced some improvement in her medical issues and had found a new job that was less stressful and more accommodating to her physical needs. (AR 3472-73.) However, she still experienced chronic pain and periodic depression, which impacted her punctuality and work attendance. (AR 3473.) Her relationship with her family had also improved. (AR 3474.) She stated that when she stopped working in 2013, she underwent physical therapy and received Toradol shots to manage the pain, but relief was fleeting. (AR 3476.) She began using the cane at that time as well, and continued to walk with it daily. (AR 3476-77.) Following her October 2013 surgery, she experienced continued pain and swelling. (AR 3476.) She treated her symptoms with physical therapy, home exercise, and she entered a pain management program. (*Id.*) She was placed in a support boot, which caused hip discomfort and did not significantly help her walk. (AR 3477.) She stated that her doctors recommended that she elevate her leg above the level of her heart and ice her leg to reduce swelling; this course of action briefly alleviated her pain and swelling, but the pain would quickly return once she lowered her leg. (AR 3477-78.) She sat elevating her leg above heart level for approximately six hours each day. (AR 3478.)

Plaintiff's anxiety and depression also continued after her surgery. (*Id.*) She had difficulty sleeping due to pain, the medication for which only worked during the day. (AR 3479.) She slept most of the day and her medication affected her ability to focus and concentrate. (*Id.*) She saw a therapist and a psychiatrist approximately every three months. (AR 3481-82.) Even after she resumed working in 2017, she needed to elevate her leg above heart level; her leg swelled throughout the workday and pained her. (AR 3486.) Before she returned to work, she was elevating her leg above heart level for ten minutes every hour, but since returning, she could only do so twice a day. (AR 3487.) She continued to take medication to manage the pain and swelling, and she tried aqua therapy. (AR 3488-90.)

//
//
//

27

## C. The ALJ's Credibility Analysis

Applying the two-step procedure, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. (AR 3451.)   The ALJ then stated that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record.  (*Id.*)   She gave four reasons for discounting Plaintiff's statements.  First, they were inconsistent with Plaintiff's daily activities.  (AR 3451-52.)  Second, they were inconsistent with "other information in the case record," including contradictory statements about the severity and persistence of her symptoms that Plaintiff made to doctors that were reflected in the doctors' progress notes.  (AR 3452.)  Third, her statements about her ability to ambulate were inconsistent with objective medical evidence. (*Id.*)   And fourth, her statements were inconsistent with her failure to follow prescribed treatment that might improve her symptoms.  (AR 3452-53.)

## D. Analysis

Plaintiff argues that the ALJ failed to provide any specific or clear and convincing reasons supported by substantial evidence in the record; and none of the reasons cited by the ALJ for discrediting Plaintiff's statements can be upheld.  (Joint Stip. at 20-26.)  For the reasons discussed below, Plaintiff is incorrect and remand for reconsideration of Plaintiff's subjective statements is not warranted.

### i.  Inconsistency with "Other Information in the Case Record"

The Court turns first to the ALJ's second reason for discounting Plaintiff's statements: inconsistency with "other information in the case record."  (AR 3452.)  Here, the "other information" refers to Plaintiff's statements and mental status examination findings that

28

contradict her statements at the hearing before the ALJ.  Inconsistencies between a claimant's testimony and other evidence in the record is a specific reason for an adverse credibility determination.  *See* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.").  Here, the ALJ supported her reasoning by citing instances in the record where Plaintiff's statements and findings about her alleged impairments were inconsistent with her testimony at the hearings.  (AR 3452 (citing AR 622 (May 7, 2013 mental status examination where Plaintiff had, *inter alia*, normal concentration, memory, gait, affect, manner, thought process, insight, judgment), 1087 (February 18, 2014 report that ankle was "intact and strong," was doing "much better" and she had no complaints or pain), 1095 (February 19, 2014 assessment that Plaintiff was at full duty capacity, to which she agreed despite persistent swelling), 4670 (October 12, 2016 report that Plaintiff appeared well and was in no distress), 2176 & 2215 (June 2015 reports that Plaintiff went on a trip to Louisiana, and reports that her pain was well managed, and her mood and quality of life significantly improved due to decreased fear and anger around pain and acceptance of pain).)

Plaintiff argues that the ALJ "selectively" points to entries in the record of "some normal examination findings and periodic improvements in Plaintiff's symptoms."  (Joint Stip. at 24-25.)  An ALJ may not ignore evidence supporting disability while relying on select normal findings in the record.  *See Craig v. Astrue*, 269 F. App'x 710, 712 (9th Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Lacy v. Saul*, 2019 WL 4845965, at *10 (N.D. Cal. Oct. 1, 2019) (citing *Craig* and *Robinson*).  Here, however, Plaintiff's accusations of cherry-picking are unsupported by the record.  The examples cited by the ALJ span the entire period of disability, showing a pattern of normal examination findings and improvement in Plaintiff's physical and mental symptoms.  Moreover, the record is voluminous, exceeding 4000 pages; to require the ALJ to

recount each medical report or doctor's annotation that supports her determination would be unduly onerous and impractical.  The ALJ did not skirt her obligation to review the entire record in assessing Plaintiff's disability claim, and even if she did not discuss every piece of evidence, there is no indication that the entire record was not considered.  *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 112 (9th Cir. 2003) (citation omitted).  Finally, despite her assertion that the record overwhelmingly supported her testimony, Plaintiff points to no specific evidence in the record to support the assertion other than Dr. West's opinion, which, as discussed above, the ALJ properly rejected.  (Joint Stip. at 24-25.)

### ii.  Inconsistency with Objective Record Evidence

The Court turns next to the third reason offered by the ALJ for rejecting Plaintiff's testimony—the inconsistency of her statements about her ability to ambulate with the objective medical evidence.  If properly substantiated, inconsistency with objective medical evidence may be an appropriate reason to reject a claimant's testimony.  *See* 20 C.F.R. §§ 04.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms."); *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.")  Here, though, the objective evidence supports the ALJ's credibility determination regarding Plaintiff's ability to ambulate.  Specifically, a physical examination on May 7, 2013 showed that Plaintiff had normal gait.  (AR 622.)  Additionally, Plaintiff's progress notes consistently note her antalgic gait and limp, but not her inability to walk without an assistive device, as she testified.  (*See, e.g.*, AR 1450, 3841.)

Plaintiff argues that the ALJ was not permitted to reject her testimony solely on the basis of its purported inconsistency with the objective evidence.  (Joint Stip. at 25-26.)  This

argument relies on the assumption that each other reason provided by the ALJ for rejecting Plaintiff's testimony was inappropriate.  However, as discussed above, the ALJ provided at least one other legitimate reason to anchor her credibility determination.  Thus, Plaintiff's argument is not persuasive.  Plaintiff further argues that her complaints were substantiated by the objective medical evidence and by Dr. Nadella's opinion.  (*Id.* at 26.)  This too does not persuade the Court that remand is warranted.  Plaintiff's claim that her testimony was substantiated by the objective evidence is conclusory and she cites no evidence to support the assertion.  And Dr. Nadella opined on Plaintiff's mental limitations, which is not probative of Plaintiff's ability to ambulate; in any event, as discussed above, Dr. Nadella's opinion was properly discounted.

Plaintiff challenges the additional reasons offered by the ALJ for rejecting her testimony.  However, as the Court already has concluded that the ALJ had specific and cogent reasons to discredit Plaintiff's testimony, the Court need not consider Plaintiff's additional arguments.  In sum, the ALJ properly evaluated Plaintiff's subjective statements in accordance with the relevant factors set out in the regulations.  20 C.F.R. § 404.1529(c). Consequently, remand is not warranted on this issue.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error.  Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, it is ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

//

31

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATE: August 17, 2020

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE